UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:23-cr-10236 |
| DAVID FINNERTY | |

**DEFENDANT DAVID FINNERTY'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c)**

David Finnerty, through counsel, respectfully moves this Court to enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) on the sole count of conviction—Count One: Aiding and Abetting the Falsification of a Record in a Matter Within the Jurisdiction of a Federal Agency. This request is based on (1) the insufficiency of the evidence, and (2) the internally inconsistent verdict when considered in light of the acquittal on Count Two and the elements set forth in the Court's final instructions to the jury.

**I. Procedural Background**

On May 29, 2025, a jury convicted Mr. Finnerty on Count One, which alleged that he aided and abetted MBTA Transit Police Department (TPD) Officer Dorston Bartlett in falsifying an arrest report related to a use of force incident involving Anthony Watson on July 27, 2018, at Ashmont Station. The jury acquitted Mr. Finnerty on Count Two, which charged him with personally falsifying the Duty Supervisor/OIC Command Staff Shift Briefing ("the shift briefing report") dated July 27, 2018.

**II. Legal Standard**

A judgment of acquittal is warranted under Rule 29(c) when the evidence, viewed in the light most favorable to the government, is insufficient to permit any rational trier of fact to find

1

the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Ofray-Campos*, 534 F.3d 1, 31 (1st Cir. 2008).

### III. Insufficiency of the Evidence

The government failed to prove beyond a reasonable doubt that Mr. Finnerty undertook any affirmative act with the conscious objective of helping Bartlett file a false police report regarding an assault in which he did not participate and during which he was not present[1] . Officer Bartlett's own testimony significantly undermined the prosecution's theory: he averred that he never told Finnerty that his report was false, never stated that any part of his account was untrue, and never disavowed, withdrew, recanted, or retracted his narrative claims. Instead, Bartlett repeatedly asserted verbally, as well as in the multiple drafts/iterations of his arrest report that Anthony Watson assaulted him—both inside the train car and again on the train platform. Exhibits admitted at trial established he maintained these claims in his initial draft written report, in all his subsequent written revisions/changes to the same, and in his final report, which he filed at 7:09 AM. Moreover, Bartlett admitted on cross-examination that he kept his core allegation that Mr Watson had assaulted him in each of his six of his drafts, as well as in the final version he submitted for command-review; also, that as recently as his May 17, 2023 federal grand jury testimony---nearly five years after the events at issue---and in a related prior proffer session with the FBI and federal prosecutors shortly before his grand jury appearance, he was still claiming he thought Watson was "getting ready" to swing on him or otherwise assault him. Importantly, the government failed to prove Bartlett's final version of the report was seen by Mr. Finnerty; Mr. Finnerty testified he never saw it.

---

[1] The evidence was undisputed that at the time of the assault, Finnerty was 5.6 to 6 miles away at TPD Headquarters at 240 South Hampton Street, in Roxbury, MA, where he had been detailed that night and remained there for entirety of the Late Shift on July 27, 2018.

In addition, all witnesses who viewed the MBTA video surveillance footage testified that it did not capture what occurred inside the train car and showed only limited portions of the interaction on the platform. These video gaps left material aspects of Bartlett's narrative unconfirmed by video evidence. Finnerty testified that he asked Bartlett three separate times whether he was telling the truth, and once whether he was misremembering. Each time, Bartlett insisted that he was telling the truth and not misremembering. Finnerty also testified that he did not know Bartlett's report was false.

Finnerty reviewed Bartlett's 4:17AM draft narrative together with Barlett, using the same or similar techniques government witnesses (defensive tactics/use of force instructor) Domingo Gonzalez and former TPD Deputy Superintendent Sean Reynolds, and defense witness, retired TPD Lieutenant, James Witzgall, all testified they employ when they determine arrest and/or use of force narrative reports appear to be missing important details or elements. However, when Finnerty was ultimately unable to reconcile the portions of the video he did see with Bartlett's repeated narrative, he chose not to stay silent but to elevate his concerns up the chain of command. He testified that at/around 6AM, he personally informed then-Deputy Superintendent Sean Reynolds that the use of force by Bartlett at Ashmont Station was "bad," "worse than Garvey[2]," and was excessive and unjustified —that it did not meet the elements of probable cause or the MBTA's use of force policy. Reynolds largely confirmed that this conversation occurred, testifying that Finnerty voiced (if not verbatim) similarly-stated concerns to him between approximately 6:05 and 6:13 AM—nearly an hour before Bartlett's final report was filed. Reynolds testified that without Finnerty's verbal report to him, he would not have investigated the incident that same morning. Reynolds conceded that despite Finnerty having done so, he did not

---

[2] The Garvey case was a prior use of force involving baton strikes by a former TPD patrolwoman which Reynolds investigated and determined to be excessive, unjustified, and unlawful.

intervene or stop Bartlett from filing his final report an hour later, even though he had the authority so to do.

Moreover, Reynolds testified that, despite Finnerty's sharing his concern about Bartlett having engaged in an excessive use of force, he did not himself conclude the use of force was, in fact, unjustified until after he discussed it with Deputy Richard Sullivan, who shared 42 years of combined supervisory experience with him -- and who, together with Reynolds, served as the department's final authority on all use of force determinations. Notably, Reynolds further testified that unlike Mr. Finnerty, he did not speak with Bartlett before forming his opinion as to the appropriateness of the use of force, nor did he speak with, or attempt to speak, with Mr. Watson.

The record contains no evidence that Mr. Finnerty directed Bartlett to submit a false report, encouraged him to do so, or otherwise intentionally assisted him. On the contrary, the record supports that Finnerty did what any conscientious officer should do---attempted to adduce as much detail as he could from the reporting officer and when it still did not reconcile with the available video evidence expressed serious concerns, in person, to his superior officer. This conduct is inconsistent with the specific intent and affirmative conduct required to support an aiding and abetting conviction.

As the Court properly instructed the jury, "failure to stop the crime from happening" or having a "general suspicion" that wrongdoing might occur is insufficient to establish aiding and abetting liability. There must be a purposeful, affirmative act taken with the conscious objective of facilitating the principal's crime: an element the government failed to prove beyond a reasonable doubt. (See Jury Instructions, pp. 35–36.)[3]

---

[3] While defense counsel made a strategic decision not to object during the government's rebuttal, we note for the record our belief that the prosecutor misstated key evidence—particularly the testimony of Bartlett, Finnerty, Witzgall, and Reynolds—in ways that may have improperly influenced the jury. The defense raises this not as an independent ground for acquittal but to preserve it for potential review.

4

**IV. Inconsistent Verdicts**

The jury's verdicts on Counts One and Two are logically incompatible. The government's theory was that both counts arose from the same course of conduct: namely, Mr. Finnerty's statements and omissions regarding Bartlett's actions. Yet the jury acquitted Mr. Finnerty on Count Two, which alleged that he himself falsified the shift briefing report, while convicting him on Count One for aiding and abetting Bartlett's allegedly false arrest report. Both charges required the jury to conclude that Mr. Finnerty knowingly advanced a false narrative with the intent to obstruct a federal matter. The finding of guilty on one and not guilty on the other—based on the same underlying theory and facts—renders the guilty verdict inherently inconsistent and legally untenable.[4]

**V. Conclusion**

Because the evidence was insufficient to establish that Mr. Finnerty affirmatively and intentionally aided Officer Bartlett in filing a false report, and because the verdicts are internally inconsistent, this Court should enter a judgment of acquittal on Count One pursuant to Fed. R. Crim. P. 29(c).

---

[4] Defense counsel is aware of United States Supreme Court precedent stating that inconsistent verdicts generally are unreviewable. *United States v. Powell,* 469 U.S. 57, 66 (1984). In a two-count indictment such as this, however where each count requires proof that the defendant knew the same statements were false, the rationale of *Powell* carries less force.

Dated: June 3, 2025

                                    Respectfully submitted,

                                    DAVID FINNERTY
By and through his attorneys,


  _/s/Bradford Bailey_____
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.: (781) 589-2828
Fax: (857) 265-3184
brad@bradbaileylaw.com


 _/s/Patrick L. Garrity\_\_\_
Patrick L. Garrity, BBO#713116
BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.:   (603)-548-3490
Fax:   (857) 265-3184
Patrick@bradbaileylaw.com


### Certificate of Service

    I, R. Bradford Bailey, hereby certify that on this the 3rd day of June, 2025, I caused a true copy of the foregoing motion to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

                                   _/s/ *R. Bradford Bailey*_____
                                   R. Bradford Bailey